UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES RUSSELL CASS,<br><br>                      Plaintiff,<br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                      Defendant. | Case No. 3:14-cv-5847-KLS<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

       Plaintiff has brought this matter for judicial review of the defendant Commissioner's denial of his application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, the Commissioner's decision to deny benefits is affirmed.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

       On November 12, 2010, Plaintiff protectively filed an application for SSI, alleging disability as of the same day, due to spinal disorder, back injury, carpal tunnel, ulnar nerve damage, weak knees, anxiety, left shoulder surgery, and problems with his feet. <u>See</u> Administrative Record ("AR") 78-79. His application was denied upon initial administrative review and on reconsideration. <u>See</u> AR 90, 103. A hearing was held before an administrative

ORDER - 1

law judge ("ALJ") on September 25, 2012, at which Plaintiff, represented by counsel, appeared and testified, as did a vocational expert.  See AR 3-43.

On January 30, 2013, the ALJ issued a decision in which Plaintiff was determined to be not disabled. See AR 62-72.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 22, 2104, making the ALJ's decision the Commissioner's final decision. See AR 48-50; see also 20 C.F.R. § 404.981, § 416.1481.  On October 29, 2014, Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #3.  The administrative record was filed with the Court on December 31, 2014. See ECF #9.  The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for award of benefits or further proceedings, because the ALJ erred: (1) in determining that Plaintiff did not meet or equal a listed impairment; (2) in discounting Plaintiff's credibility; (3) in failing to fully consider Plaintiff's hemorrhoidal prolapse; and (4) in assessing Plaintiff's residual functional capacity.  For the reasons set forth below, the Court disagrees that the ALJ erred in determining Plaintiff to be not disabled, and therefore finds that the Commissioner's decision should be affirmed.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Comm'r of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by

ORDER - 2

substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." (citing Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1987))).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("'Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.'" (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971))). [1]

I.     The ALJ's Determination that Plaintiff's Impairment Does Not Meet a Listing

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

made at that step, and the sequential evaluation process ends. See id.  At step three of the sequential evaluation process, the ALJ must determine whether any of the claimant's impairments meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(4)(iii).  The Listing of Impairments "describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a).  "If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled at step three."  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).  At step three, the claimant bears the burden of proving that his impairment meets a Listing.  See, Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

Plaintiff argues that the ALJ erred in the conclusion that his degenerative disc disease did not satisfy the listing for disorders of the spine, 20 C.F.R. § 404 App. 1 § 1.04.

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable

ORDER - 4

> imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subp. P, Appx. 1 § 1.04.

According to the ALJ, Plaintiff's degenerative disc disease does not meet or equal listing 1.04. "There is no evidence of neurological deficits such as impaired sensation, strength, or deep tendon reflexes. Furthermore, no medical findings establish the presence of spinal arachnoiditis or lumbar spinal stenosis with pseudoclaudication or the inability to ambulate effectively as that term is defined in the regulations." AR 66. Plaintiff disagrees, claiming that the record includes evidence of compromised nerve root due to central canal stenosis, neuro-anatomic distribution of pain, limitations of movement of his spine, positive straight leg tests, muscle weakness in his left hip, decreased sensory perception, and decreased reflexes in his right ankle. Dkt 11 at 6-7.

While Plaintiff has a longstanding diagnosis of degenerative disc disease, the test results are equivocal and support the ALJ's finding that he does not meet Listing 1.04. For example, an MRI of his lumbar spine showed evidence of "mild" central canal stenosis and "moderate left subarticular recess narrowing with displacement of the traversing left L-4 nerve root but no evident compression." AR. 351. The medical impression of this imaging specifically noted no root compression in regards to the subarticular recess narrowing and makes no mention of any nerve root compression from the mild central canal stenosis. AR. 351. A May 2011 electrodiagnostic evaluation of the lower back and lower extremities was interpreted as "mildly abnormal." The testing showed good motor strength with no significant focal weakness in either lower extremity and intact gross sensory examination. AR 440.

Listing 1.04 requires evidence of nerve root compression characterized by, among other symptoms, motor loss and sensory loss. The medical imaging failed to show evidence of nerve root compression. The diagnostics specifically demonstrated good motor strength and sensation. Given this medical evidence, Plaintiff did not satisfy his burden of proof that his impairments meet or equal Listing 1.04. The ALJ did not err in the conclusion that Plaintiff was not disabled at step three.

ORDER - 5

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

ORDER - 6

The ALJ found that Plaintiff's credibility was undermined and not all of his allegations were entirely credible. AR 67. The ALJ discounted Plaintiff's credibility because Plaintiff delayed needed surgery, had a poor work history, failed to comply with medical treatment, and his activities of daily living and objective medical evidence did not support the severity of the alleged symptoms. AR 65, 68-69. Plaintiff contends that the ALJ's findings are not clear and convincing reasons to discredit his testimony. Dkt. 11 at 7-8.

Plaintiff argues that the ALJ improperly discredited him for use of prescribed medical marijuana. Dkt 11 at 7. The ALJ mentioned the use of medical marijuana. "The claimant additionally reported using medical marijuana throughout the record. The claimant even indicated he had smoked 'a bowl of marijuana' at 6:00am accordingly [sic] to his prescription prior to attending his evaluation with Rindee Ashcraft, Ph.D." AR 68. These two statements are the totality of the ALJ's discussion of Plaintiff's marijuana use and contain no judgment on the issue. The ALJ included this information in a paragraph among issues pertaining to credibility, but made no direct connection between Plaintiff's medical marijuana use and his credibility. Therefore, the ALJ did not improperly "import" his personal opinion as to the wisdom of marijuana use into the credibility determination, as alleged by the Plaintiff. Dkt 11 at 7.

The ALJ did err in his evaluation of Plaintiff's delay of surgery. In his discussion of plaintiff's hemorrhoidal prolapsed and appointment with Richard Thirlby, M.D., the ALJ found that, "this condition could be effectively treated with surgical hemorrhoidectomy. However, the claimant testified that he delayed his surgery." AR 69. This is factually incorrect. In July 2011, Plaintiff underwent hemorrhoid banding to ameliorate his prolapse as recommended by colorectal surgeon Dr. Thirlby. AR 556. Dr. Thirlby opined that "given his chronic pain history (he is barely able to assume position on the proctology table) I do not think hemorrhoidectomy is

ORDER - 7

in his best interest." AR 556.  Plaintiff took appropriate corrective action for his hemorrhoidal prolapse.  The postponed surgery was to remove a newly diagnosed testicular cyst and had no connection to the hemorrhoidal prolapse.  AR 7, 544. The ALJ's factual inaccuracy was improperly used against plaintiff to discount his testimony. This was error.

While the ALJ erred with respect to the surgical delay, the ALJ properly found that plaintiff's refusal to take his mental health medication detracted from his credibility as to the severity of his symptoms.[2]  AR 65.  When assessing credibility, the ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Tommasseti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).  Here, the ALJ noted, "[t]he medical record revealed that the claimant's treating physician Timothy Panzer, M.D., indicated that the claimant's prescription medication Citroprolam would control the claimant's reports of anxiety.  Dr. Panzer indicated that although the claimant was given a prescription and repeatedly admonished to take it, the claimant refused." AR 65.  The record reflects Plaintiff's failure to take his medication despite repeated instruction as to the benefits.  AR 485, 489, 492.

When discussing mental health issues, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen v. Chater, 100 F.3d 1462, 1465 (1996) (quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989)).  But, the ALJ can reasonably conclude that the lack of treatment is inconsistent with the alleged severity when Plaintiff presents no medical evidence that his resistance was attributable to his mental impairment rather than personal preference.  Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).  Here, Plaintiff presented no reason for his failure to take medication despite repeated urging from his physician.  He eventually began taking the

---

[2] Plaintiff fails to raise the medication compliance issue in his opening brief.  The Commissioner addresses the issue to support the credibility determination, and Plaintiff responds to the issue in his reply brief.

ORDER - 8

medication, but discontinued almost immediately due to undesirable side effects and refused to try another antidepressant. AR 498. Plaintiff exercised his own personal preference with regard to his mental health medication, rather than follow the physician recommended treatment. Therefore, the ALJ did not err in concluding that his testimony was inconsistent with the actual severity of his impairment and undermined his credibility.

Plaintiff's objective medical evidence also supports the ALJ's credibility determination. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). In this case, Plaintiff alleged disabling pain due, in part, to his degenerative disc disease. However, the ALJ found, and the record supports, that Plaintiff could dress and undress, get up and down from a chair, and on and off the medical exam table without difficulty. AR 69, 432. The objective medical evidence showed some decreased lumbar range of motion, decreased sensation in his bilateral lateral thighs, and a slight limp. AR 432-33. But, Plaintiff had good motor strength without significant focal weakness and negative straight raises. AR 432, 440. The electro-diagnostic testing showed only mildly abnormal findings. AR 69. The medical evidence showed limitations, but did not support total disability. The ALJ did not err by considering the objective medical evidence in the credibility determination.

Finally, the ALJ also found that plaintiff's poor work history "indicates that the claimant has issues maintaining full time employment that are not related to his impairments." AR 69. Plaintiff does not address this issue and any argument concerning his poor work history is waived. Zango, Inc. v. Kaspersky Lab, Inc., 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("[A]rguments not raised by a party in an opening brief are waived."). The record shows that

ORDER - 9

Plaintiff only has reported earnings for one year between 1995 and 2012. AR 179. A poor work history can negatively impact credibility with regard to inability to work due to disability. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff's poor work history, failure to comply with his mental health treatment, and lack of objective medical evidence all provide clear and convincing reasons to discount Plaintiff's testimony and support the ALJ's credibility determination. Although the ALJ erred with respect to Plaintiff's surgical delay, including an erroneous reason among other valid reasons to discount a claimant's credibility does not negate the ALJ's determination and is, at most, harmless error. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Therefore, reversal is not required on this issue.

III.   Plaintiff's Hemorrhoidal Prolapse

Plaintiff contends that the ALJ erred by failing to fully evaluate his hemorrhoidal prolapse and the resulting limitations. Dkt. 11 at 5. As discussed above, the ALJ erroneously determined that Plaintiff had delayed necessary surgery for this condition. The ALJ incorrectly found that Plaintiff had delayed hemorrhoid surgery, when Plaintiff had already had the recommended hemorrhoid banding procedure. AR 556. The delay related to surgery to remove a cyst, not treat the hemorrhoids. AR 7, 544.

Clearly the ALJ erred in his analysis of Plaintiff's hemorrhoids. The question remains whether this error requires reversal. An ALJ's decision will not be reversed if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir.2005). An error is harmless if it is nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion. Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

ORDER - 10

Plaintiff testified that his hemorrhoid prolapse caused painful bowel movements and that he needed to shower after every one in order to manually reduce the prolapse.  AR 24, 34.  He argues that this could cause a health and safety issue that would preclude employment.  Dkt. 13 at 2.  Despite his testimony, the record does not support the severity of Plaintiff's difficulties in this respect.  During an appointment with Dr. Panzer, Plaintiff reported a two year history of bulging tissue and blood associated with bowel movements. AR 495.  Dr. Panzer referred him to a colorectal surgeon, but Plaintiff did not immediately make an appointment and had to be encouraged to call during a subsequent visit.  AR 498. Prior to surgery, Dr. Thirlby found that Plaintiff had hemorrhoidal prolapse that resulted in occasional blood on the toilet paper and periodically required manual reduction.  AR 554.

Dr. Thirlby performed hemorrhoidal banding and opined, "I think this will help with his symptoms."  AR 556.  A month after the procedure, Plaintiff reported to Dr. Panzer that he no longer had pain, bleeding, or prolapse with bowel movements.  AR 502.  After several months, Plaintiff reported a single episode of minor bleeding but no prolapsing tissue.  AR  505. Subsequent medical records made no reference to any additional problems stemming from his hemorrhoidal prolapse.  AR 510-522.

From the medical records, Plaintiff's hemorrhoid banding procedure appeared to have been a success.  The records do not contain evidence of any continuing or recurrent problems and do not support Plaintiff's allegations of limitations related to hemorrhoidal prolapse.  With only Plaintiff's testimony to support the severity of the impairment, the ALJ's factual error was nonprejudicial and, therefore, harmless. ALJ properly took into account those limitations supported by the record that did not depend solely on Plaintiff's subjective complaints.  See, Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

ORDER - 11

Furthermore, the vocational expert ("VE") provided testimony that Plaintiff would probably be employable even if he needed to shower after bowel movements. AR 41. Plaintiff posed a hypothetical to the VE concerning whether employers would tolerate an individual who "would need an unscheduled and unauthorized break of, I guess we'll say an hour or more, three to four times in a month. In this case, in order to return home in order to bathe." AR 41. The VE responded that this would probably be acceptable to an employer.

> I generally justify that if a person misses up to one day a month, that's generally acceptable. You know, three hours in a month is less than one day, so a person who needs to take the kind of break or be absent from work, it'd be the same as a medical appointment or other kind of thing."

AR 41. Given this conclusion, Plaintiff's possible unscheduled absences to return home to shower would likely have no effect on his employability. Including such a limitation in Plaintiff's RFC would not have changed the ALJ's decision. Therefore, omission of any limitations related to hemorrhoidal prolapse was inconsequential to the ultimate non-disability determination. The error was harmless.

V.  The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") [SSR] 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

The RFC is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. Plaintiff contends that the ALJ improperly determined that he could

ORDER - 12

perform the full range of sedentary work limited by occasional postural movements, only frequent manipulation for fingering and feeling, and avoidance of extreme conditions and hazards.  AR 67.  Plaintiff argues that this RFC does not address the limitations assessed by Dr. Panzer or the limitations imposed by his mental impairments.

Dr. Panzer assessed that Plaintiff should avoid repetitive bending, crouching, stooping, and unprotected heights.  AR 547.  This physical assessment is consistent with sedentary work. "Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." SSR 96-9p.  Thus, the recommended postural limitations are generally inherent in the sedentary RFC. To the extent that the ALJ erred by failing to specifically include Dr. Panzer's assessed limitations in the RFC, "any error was harmless since sedentary jobs require infrequent stooping, balancing, crouching, or climbing." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

Plaintiff also argues that the ALJ failed to incorporate his mental health limitations into the RFC.  But, the record showed that Plaintiff's anxiety symptoms were mild.  As discussed above, Plaintiff did not take his prescribed mental health medication, casting doubt on the severity of his impairment. Furthermore, examining psychologist Rindee Ashcraft, Ph.D. assessed few mental health issues that would impact his ability to work. "There is no evidence of decompensation in the workplace. Claimant's ability to respond appropriately to routine changes in a typical work setting is unlikely to be impaired by his mental health condition in settings that match claimant's skill set.  However, he may occasionally be bothered by increased anxiety." AR 429.  This potential for occasional anxiety did not result in any assessed limitations.

ORDER - 13

Therefore, ALJ did not err in omitting non-exertional limitations related to mental impairments from the RFC. The RFC properly reflects Plaintiff's functional capacity despite his limitations.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 22nd day of May, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 14